DECISION
This matter was tried without a jury in September of 1995. After several continuances to acquire additional information by testimony and/or agreed facts, the court has been advised a decision must be rendered despite the court's effort to effect a voluntary settlement to a, what this court considers, a bizarre family situation.
Plaintiff, Herbert F. Hall, II age 53 (now 54) is one of 4 children born to Herbert F. Hall, Jr. and Martha R. Hall. The 3 defendants Dorothy Piermont age 71, Bernice Amber age 68 and Janice Little age 57 are the plaintiff's sisters. Janice Little is also the executrix under their father's will.
Mother and father acquired a 40+ acre farm in 1938, approximately 20 acres on the south side of Union Street in Portsmouth, R.I. and approximately 20 acres on the north side. The residence and various outbuildings were located on the north side and open fields on the south side.
Plaintiff testified that he was born in 1942 and has lived in the residence except for 2 years or so in the Army. Janice was born there, and Dorothy and Bernice at various times in their lives, lived there and raised their children.
Herbert testified that all the time he lived there he paid his own way as well as paying board.
Each of the 4 children at various times was "on the outs" with their father, but Herbert's situation was the oddest and lasted the longest. It appears that the older daughters at some time made peace with their father. Herbert, however, appears not to have spoken to his father from about 1956 to 1991 when the father died, a period of some 35 years, while still residing in the same 18th century farmhouse.
All parties conceded with words of varying intensity that Herbert and his father hated each other, disliked each other, couldn't get along, etc.
For a long period of time Bernice had the same relationship with her father, although she eventually reconciled.
Mother's relationship with Herbert, however, was different and his sisters indicated that mother was "protective" of Herbert and they were "very close."
Herbert, while paying board but no rent, worked and assisted on the farm and in maintaining it.
In the 70's, the parents began discussing the devolution of the farm property. In August of 1980 the parents deeded the balance of property on the South side of Union Street to Janice, having deeded to her 2 1/2 acres in the 50's. No testimony was elicited as to whether either transaction was the result of a purchase or was in the nature of a gift.
Mrs. Hall wrote a memorandum which is plaintiff's exhibit 3, signed by Mr. Hall on the day after the deed to Janice, i.e. the deed to Janice was signed August 30, 1980 and the memorandum August 31, 1980. All the parties conceded that the writing of the memo was by Mrs. Hall and Mr. Hall's signature appeared to be genuine.
At the time, Herbert prevailed upon his mother, so he testified, to have something in writing as he didn't trust his father. And Mrs. Little testified she couldn't see her father giving anything to Herbert, all of which coincided in the testimony given by all participants. Mother fell ill in 1984 and for all practical purposes was bedridden until her death on April 12, 1990. She executed a will June 26, 1984 in which she named Herbert as executor, gave a small monetary bequest to Dorothy, and divided the residue to the remaining 3 children. She did not mention the real estate in her will.
Father executed his will December 21, 1988 and died April 22, 1991. His will named Janice as executrix and left 1/2 of his estate to Janice after giving her the henhouse, corncrib and extension ladder, and the balance to Dorothy and Bernice equally. He specifically excluded anything for his wife and son for the reason that they were adequately provided for.
From the time of mother's illness in May of 1984 until her death in April of 1990, she was cared for by Herbert, a homemaker, and help from Janice and Dorothy until Dorothy's husband fell ill after the first year, probably in 1985.
In the various discussions with his mother over the years, Herbert had had prepared a survey indicating what his desires were. This was done before the 1980 memo, and was memorialized in a survey and a sketch prepared by Herbert which attempted to comply with zoning, etc. Testimony was presented that Mrs. Hall discussed the survey and sketch with Mr. Hall.
I cannot envision the continued tension that must have existed in that household for some 35 years. How Mrs. Hall could have existed as a buffer between her husband and her son for so long a time, leaves me incredulous. But accepting the testimony of all concerned, the situation must have existed and I believe, explains the uncontradicted facts which occurred after Mrs. Hall's death.
I believe that Mrs. Hall, after seeing her son devote all those years in assisting on the farm without any recognition from his father, was, to say the least, protective of Herbert.
There was no testimony as to the formal education of Mr. 
Mrs. Hall, and since universal education had not yet been fully accepted for persons born at the turn of the century, whatever knowledge the parents had was acquired just by living through the years. It appears to me that Mrs. Hall, despite the knowledge she had of her husband's "dislike" for Herbert, nevertheless believed he would do the right thing if push came to shove. Thus she felt secure in the power of the memorandum that Mr. Hall would do right and would comply with the agreement he made with his wife.
The acquisition by Mr. Mrs. Hall of the 40+ acres of farmland was apparently held by them in a tenancy which guaranteed the survivor would hold title in fee in the event of the death of the first, otherwise Mr. Hall's will indicating that his wife was adequately cared for and the specific bequests of what may be considered as personalty to Mrs. Little, would make no sense in the event Mr. Hall died first. But since Mrs. Hall was bedridden and with hindsight that she would predecease him, the clause in the will as to her having been cared for in the event he predeceased her makes some sense. However, nothing in the evidence presented establishes that Herbert has been provided for, especially in light of the animosity Mr. Hall had for Herbert. Unless of course, the clause was inserted solely as the scrivener's idea of closing up loose ends.
The absence of any provision in Mrs. Hall's will for Herbert, insofar as the house is concerned, is readily explained in light of her illness, her anticipated death before her husband and the belief that her husband would abide by their intent as stated in the memo.
I therefore find by clear and convincing evidence there was adequate consideration from Mrs. Hall to Mr. Hall in her agreeing to convey the balance of the southerly portion of the farm to Mrs. Little in exchange for Mr. Hall's promise to convey i.e. Herbert "to have" the house buildings etc. as depicted in the survey and sketch presented during trial.
The defendants are ordered to convey to Herbert F. Hall III, the aforementioned premises in accordance with the survey and sketch.